## Cincinnati, New Orleans & Texas Pacific Railway Company v. Magee.

(Decided April 22, 1924.)

### Appeal from Boyle Circuit Court.

1. Master and Servant—Knowledge by Master of Defective Appliances Essential to Liability for Injuries.—In order to recover for injuries caused by defective appliances, servant must establish that appliance was defective; that master either had, or by exercise of reasonable care should have had, knowledge of defect; and that servant did not know that defect existed.

2. Master and Servant—Evidence Held Not to Warrant Submission of Question of Knowledge of Defect in Appliances.—In action by railroad employe for personal injuries received when handle of jack flew up and broke his jaw, when engine tank was settling on truck, evidence held insufficient to show that the master knew, or by the exercise of reasonable care should have known, of any defect in the jack, if any there was, and court erred in not sustaining motion of defendant for peremptory instruction.

CHAS. H. RODES and NELSON D. RODES, EDWARD COLSTON and M. GALVIN for appellant.

BAGBY & HUGUELY for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER— Reversing.

The appellee, John Magee, recovered a judgment in the Boyle circuit court against the appellant, Cincinnati, New Orleans and Texas Pacific Railway Company, for $1,500.00 in an action for damages on account of personal injuries received by him while an employe of the appellant and in the discharge of the duties of his employment.

Its motion and grounds for a new trial having been overruled, appellant has prosecuted this appeal.

By his pleadings the appellee based his right to recover upon the alleged fact that appellant had furnished him a defective appliance with which to work. The rule is well established in this court that in order to recover for injuries caused by a defective appliance, the servant must establish that the appliance was defective; that the master either had or by the exercise of reasonable care should have had knowledge of the defect; and that the servant did not know that the defect existed. L. & N. R. R. Co. v. Hinder, 30 S. W. 399, 16 Ky. L. R. 841; Bogenschutz v. Smith, 84 Ky. 338, 1 S. W. 578; Mellot v. L. & N. R. Co., 101 Ky. 214, 40 S. W. 696; Vissman v. Southern Ry. Co., 28 Ky. L. R. 429, 89 S. W. 502, 2 L. R. A. (N. S.) 469; Howard v. Stearns Coal & Lumber Co., 184 Ky. 598, 212 S. W. 463.

Keeping this rule in mind, we will examine the testimony introduced for appellee in the trial court to ascertain whether, as is contended by appellant, the trial court should have peremptorily instructed the jury to find for it.

The appellee, Magee, and three fellow servants were engaged in placing a set of new wheels on the truck of the tank of a switch engine in appellant's yards at Danville, Kentucky. By placing a fifty-ton Joyce-Grinlan jack under each rear corner of the tank it had been raised from the truck, the truck rolled out and the new wheels substituted. The morning of the day of the accident was consumed in this work. In the afternoon the workmen rolled the truck back under the tank and, by the use of the two jacks, lowered it until its weight rested on the truck. It was found then that the tank had not settled exactly "on center." In order to bring the tank into proper position, the man on the opposite side of the tank so placed his jack that by its use he could force the tank in the direction of Magee and thus cause it to settle "on center." Magee started to move his jack from under the tank and, as he testified, had moved it some twelve or eighteen inches and far enough to be clear of the tank. The foreman on the job directed him to leave his jack under the tank as it might be needed further, and he then replaced it. When the tank was forced in the direction of Magee and came "on center" it dropped something like two inches. When the tank first came to rest on the truck,

Magee continued to lower his jack until it was in the clear, but when the tank came "on center" and dropped into place it struck the head of the jack. The great weight striking it in that way caused its handle to fly up and strike Magee, breaking his jawbone. Magee testified that this occurred just as he replaced the jack.

In both the petition and amended petition Magee's cause of action was predicated upon the defective condition of the jack. Magee testified that the jack was defective. His testimony, however, was largely confined to the theory that had it not been defective the handle would not have flown up as it did when the tank dropped upon it. He did not testify as to any of its mechanism that was out of order or repair. Neither did he testify that the master had knowledge of any defect in the jack, nor that it had existed for such a length of time that through the exercise of ordinary care the master should have known of it. The witness, E. R. Lowish, a machinist, in the employ of the appellant, testified that some time before this accident he had reported to the foreman employed by appellant that two of the Joyce-Grinlan 50-ton jacks were out of repair and that subsequently and before the accident occurred one of them had been repaired and put in good order again. He testified, however, that the company owned three or four of these particular jacks and that he did not know whether the jack used by Magee on this occasion was or not one of the jacks he had reported as being out of repair. He testified further that this particular make of jack is dangerous in cold weather when ice is frozen in its cogs or when it has been permitted to lie around and accumulate dirt and rust in its mechanism. However, he did not testify that the jack used by Magee on the occasion in question was in either of the conditions described as dangerous.

No other witness than appellee, Magee, testified that the jack he used was defective. On the contrary they all testified that it was not defective. The testimony discloses that on the occasion in question it faultlessly performed the functions for which it was manufactured. While used by Magee it raised the great weight of the tank of the switch engine; held it throughout the morning and a portion of the afternoon; and lowered it again until it rested on the truck without mishap of any kind. That would indicate that the jack was without defect and was suitable for the use to which it was being put.

We quote from the case of Howard v. Stearns Coal & Lumber Co., a case involving facts somewhat similar to those of the case now being considered, as follows:

"To make out his case, it was necessary for plaintiff to show not only that the jack was defective, but that the defect was known to defendants or could have been known to them by the exercise of ordinary care. Even if we concede that the mere slipping of the jack, under the circumstances detailed by plaintiff, was some evidence of its defective condition, there is no evidence tending to show the character of the defect or how long it had existed. Evidence that the foreman knew that another employe had gotten his fingers cut off by the jack did not show any knowledge of any defect in the jack, because that accident may have been due entirely to the negligent operation of the jack. Had the witness Boyer adhered to his statement that the jack in question had slipped with him several times before the accident, this evidence might have been sufficient to show that the defendants could have known of its defective condition by the exercise of ordinary care, but the probative effect of his evidence was destroyed when he stated that he was not positive that the two jacks were the same, and admitted that he did not know whether the slipping of the jack that he used was due to his fault, or the defective condition of the jack. We are, therefore, of the opinion that the court did not err in holding the evidence insufficient to take the case to the jury."

The facts of that case were much more favorable to the plaintiff than were the facts of the case under consideration to the appellee, Magee. For the total failure of proof that the appellant knew or by the exercise of reasonable care could have known of any defect in the jack, if any there was, and in view of the foregoing authorities, we have concluded that the court below should have sustained the motion of the appellant for a peremptory instruction.

Hence, the judgment is reversed and cause remanded for further proceedings consistent herewith.